AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 06 2016

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT

for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Cellular Telephone, Model: SM-G531H, Serial Number: R51G93YMN5H, IMEI: 352552/07/732936/9; and devices listed in Attachment A.

Case No. 16mr9

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ______________ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841 | Manufacture/distribute a controlled dangerous substance. |
| 21 USC 846 | Attempt or conspiracy to manufacture/distribute a controlled dangerous substance. |

The application is based on these facts:

See attached affidavite.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature] SA/FBI
*Applicant's signature*

Valentine J. Fertitta IV / Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/6/16

City and state: Albuquerque, NM

[signature]
*Judge's signature*

Steven C. Yarbrough
*Printed name and title*
US Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| IN THE MATTER OF THE SEARCH OF SAMSUNG CELLULAR TELEPHONE, MODEL: SM-G531H, SERIAL NUMBER: R51G93YMN5H, IMEI: 352552/07/732936/9; AND THE DEVICES LISTED IN ATTACHMENT A, CURRENTLY IN THE POSSESSION OF THE FBI OFFICE IN ALBUQUERQUE, NEW MEXICO | Case No. ____________ |
|---|---|

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE**

I, Valentine J. Fertitta IV, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been a law enforcement officer for over 12 years and am currently employed as a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). Prior to becoming a Special Agent with the FBI, I was a police officer in Baltimore County Maryland. I am currently assigned to the FBI's Albuquerque Division office, where I primarily investigate drug trafficking organizations and gangs. I have received in excess of 400 hours of formal training in the area of drug and gang investigations from the FBI and Baltimore County Police Department ("BCoPD"),

3. Since 2004, as both a police officer and Special Agent with the FBI the case agent and as a supporting agent, I have participated in hundreds of investigations to include those involving drug distribution, firearms trafficking, money laundering, and/or gang activities of

individuals and criminal enterprises. My investigative experience includes, but is not limited to, conducting surveillance, interviewing subjects, targets and witnesses, writing affidavits for and executing search and arrest warrants, handling and supervising cooperating sources, analyzing phone records, and financial records. Through my training and experience, I am familiar with the methods and means used by individuals and drug trafficking organizations to purchase, transport, store, and distribute controlled substances. I am also familiar with how those individuals and organizations hide the often substantial profits generated from their criminal activities.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not represent the entirety of my knowledge of this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched as identified in Attachment A (hereinafter the "Devices"). The Devices are currently maintained by the FBI in Albuquerque, New Mexico. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data described in Attachment B.

## PROBABLE CAUSE

6. On Monday, December 7th, 2015 Agents and Task Force Officers (hereinafter TFO's) of the Albuquerque Division of the FBI, utilizing a Confidential Human Source (hereinafter CHS) arranged to conducted a controlled purchase of 25 Kilograms of methamphetamine in exchange for $284,000 US Dollars (hereinafter USD). The operation targeted VERONICA MORENO MENDOZA (hereinafter MENDOZA) who agreed to manage and deliver the shipment of methamphetamines. On the above date at approximately 11:48 a.m. Agents and TFOs conducting surveillance in the vicinity of the 8900 block of Rough Rider Road North East, Albuquerque, New Mexico, confirmed the methamphetamine was located at 8912 Rough Rider Road.

7. MENDOZA was observed leaving 8912 Rough Rider Road NE at approximately 12:28 P.M. A marked Bernalillo County Sheriff's Office vehicle conducted a traffic stop and detained MENDOZA for further investigation. Simultaneously Agents made entry of 8912 Rough Rider Road NE. Upon entry Agents and TFO's located two male subjects, approximately

three and one half (3 and 1/2) gallons of liquid methamphetamines and approximately one and one half (1 and ½ pounds) of crystallized methamphetamine. The male subjects, identified as JOSE ESQUEDA-MARTINEZ (hereinafter ESQUEDA-MARTINEZ) and JOSE MATA-MARTINEZ (hereinafter MATA-MARTINEZ), were processing the liquid methamphetamine into a crystallized form. Upon discovery of the methamphetamine ESQUEDA-MARTINEZ, MATA-MARTINEZ and MENDOZA were placed under arrest.

8. The device identified with FBI evidence item numbers 1B257 was seized from ESQUEDA-MARTINEZ at the time of his arrest. The devices identified with FBI evidence item numbers 1B258, 1B259 and 1B260 were seized from 8912 Rough Rider Road. Items 1B258 and 1B259 were located on the kitchen counter CLOSE TO THE LOCATION WHERE THE METHAMPHETAMINE WAS BEING MANUFACTURED. Item 1B260 was located in the master bedroom ALONG WITH ESQUEDA-MARTINEZ'S BELONGINGS. FBI evidence items 1B271 and 1B272 were seized from a purse in MENDOZA's possession at the time of her arrest.

9. Through my training knowledge and experience I know cellular devices; especially "smart phones" like those seized from the above subjects contain information detailing illicit drug trafficking, drug sales and money laundering activities. I also know that due to the nature of drug transactions dealing primarily in large amounts of cash and the requirement to move the cash rapidly, drug traffickers routinely store the names, contact information and account numbers of individuals who assist in transferring and laundering the proceeds of the illegal drug sales.

10. I know through my involvement in this and prior investigations of criminal organizations that members and associates maintain the names and phone numbers of their criminal associates in their telephones. I also know that members and associates utilize text messaging to communicate with one another. I know this through reliable CHS reporting on MENDOZA's organization and from reviewing the content contained in numerous cellular telephones during the course of other drug trafficking investigations.

11. The Devices are currently in the possession of FBI and have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices were first seized by Agents at the time of arrest.

**TECHNICAL TERMS**

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other

digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

13. Based on my training, experience, use, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, and portable media player. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Valentine J. Fertitta IV
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 6th, 2016:

United States Magistrate Judge
Steven C. Yarbrough

**ATTACHMENT A**

The following devices represent the property to be searched:

1. Cool Pad Cellular Phone, FBI Evidence # 1B257: Model: Coolpad 3300; Serial #: N/A; IMEI: 256691536607746822.
2. Samsung Cellular Phone, FBI Evidence # 1B258: Model: SM-G531H; Serial #: R51G93YMN5H; IMEI: 352552/07/732936/9.
3. Black Berry Curve Cellular Phone, FBI Evidence # 1B259: Model: REX41GW; Serial #: N/A; IMEI: 353566055360153
4. Motorola Cellular Phone, FBI Evidence # 1B260: Model: H75XAH6JS5BN; Serial #: 364VMU53FG; IMEI: 001700416446870.
5. LG Cellular Telephone, FBI Evidence # 1B271: Model: LGMS345; Serial Number: 507KPFX772523; IMEI: 351608-07-772523-7
6. Samsung Cellular Phone, FBI Evidence # 1B272: Model: SM-N900V; Serial #: N/A; IMEI: 990004354747770.

The Devices are currently maintained by the Federal Bureau of Investigation. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

SCY

SS

All records on the Devices described in Attachment A as related to violations of 21 USC §841 and §846.

a. lists of contacts and related identifying information;

b. ~~any information~~ related to ~~owner/user, associates, or activities, including names, addresses, phone numbers, monikers,~~ monikers drug ledgers, drug descriptions, pay-and-owe messages (messages related to money owed for drug transactions), bank account numbers (related to persons identified in attached affidavit), or any other identifying information of owners;

SCY

c. any information related to drug trafficking pertaining to owner/user, or related persons and businesses;

d. cellular telephone account information, credit card payment information, financial records pertaining to the account and any other details pertaining to the account(s) established within the Device.

e. Evidence of user attribution showing who used or owned the Devices at the time the activities described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.